# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00350-SCT

*ERA FRANCHISE SYSTEMS, INC.*

*v.*

*VENNIT B. MATHIS, II*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/2005 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER A. SHAPLEY |
| | ROBERT L. GIBBS |
| | JOSEPH ANTHONY SCLAFANI |
| | STEVE J. ALLEN |
| ATTORNEYS FOR APPELLEE: | EDDIE J. ABDEEN |
| | SAM S. THOMAS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 06/22/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Vennit B. Mathis, II, filed a "Complaint for Declaratory and Other Relief" in the Chancery Court of Covington County against a real estate franchising corporation, ERA Franchise Systems, Inc. ("ERA"), his former business partners, their newly-formed business entities, and his former partners' new partners in the newly-formed business entities.  ERA filed a motion to have the action transferred to circuit court.  The chancellor held a hearing and, ruling that he would bifurcate the trial between equitable and legal claims, denied the

motion to transfer. ERA then filed a petition for interlocutory appeal which this Court granted. *See* M.R.A.P. 5.

**FACTUAL AND PROCEDURAL HISTORY**

¶2.     Vennit B. Mathis, II, filed suit against ERA Franchise Systems, Inc., Jackie R. "Chip" Hill, Pamela Hill, H. Stuart Irby, Mark Warren, Real Estate Professionals of Central Mississippi, LLC (REP-Central), and Real Estate Professionals of the Pine Belt, LLC (REP-Pine Belt) in the Chancery Court of Covington County.[1] Mathis's complaint alleged he had acquired a fifty percent equity interest in, and was a member of, Real Estate Professionals, LLC ("REP"), along with defendants Chip and Pamela Hill. Mathis also alleged he signed documents guaranteeing REP's obligations to ERA under the parties' Franchise Agreement and that he made periodic working capital loans to REP and/or Chip Hill related to REP's business operations. Mathis alleged Chip Hill induced him to lend additional funds and pledge personal assets as security for loans to Chip Hill and/or REP, based on Chip's representation that he would transfer his ownership interest in certain parcels of real estate (titled in Chip's name) to Mathis, in addition to paying back loaned funds.

¶3.     Mathis alleged Chip and Pamela sold their equity interest in REP to Stuart Irby but remained REP employees, and that Chip Hill and/or Irby and/or others wilfully and intentionally diverted REP's corporate assets to new entities (REP-Central and REP-Pine Belt) in an attempt to convert REP's assets and intentionally exclude Mathis from REP's business. He contended such actions were taken with ERA's knowledge and/or active

---

[1] ERA is the only defendant who has appealed the chancellor's decision.

2

participation. Mathis also alleged Chip Hill signed various documents which transferred the hard assets and real estate listings of REP to the new entities, and that Chip, along with Pamela Hill, Irby, and Warren, induced REP's real estate agents to terminate and/or not honor their agent contracts with REP by becoming agents of REP-Central and/or REP-Pine Belt. He claimed these actions left REP with no cash flow or way to generate business, resulting in Mathis' loss of his equity investment in REP, and the loss of REP's ability to pay its obligations (e.g., those owed to ERA under the Franchise Agreement).

¶4. Mathis also alleged REP-Central and REP-Pine Belt misappropriated REP's franchise rights and earned commissions that should have accrued to REP, while allowing money owed to ERA under the franchising agreement to accumulate as a debt of REP. He claimed the various defendants' actions were done knowingly, wilfully, and intentionally to cause REP to default on its Franchise Agreement so that REP-Central, REP-Pine Belt, and their principals could enter new franchising agreements with ERA. He also claimed that the defendants all engaged in a course of conduct to deliberately:

> (1) appropriate the assets, rights and corporate opportunities of REP; (2) convert the legal and practical interests of Mathis in REP; (3) cause REP and Mathis so much harm and damage as to attempt to keep Mathis from redressing the wrongs done Mathis; (4) intentionally breach fiduciary and other legal duties owed Mathis; (5) intentionally take away rights and assets of REP; and (6) do other wrongs to Mathis to his substantial harm.

¶5. Mathis's complaint contained fourteen causes of action - first seeking the right to bring derivative claims on behalf of REP and including numerous breach of contract allegations, breach of fiduciary duties, violations of various duties of loyalty and care, tortious interference with contracts and business advantages, conspiracy, and other causes

3

of action.  Mathis requested relief in the form of a constructive trust, estoppel, specific performance, and actual and punitive damages.

¶6.	ERA filed an answer to Mathis's complaint, adding counterclaims against Mathis and cross-claims against REP, the Hills, and Irby.  ERA later filed a motion to transfer the case to circuit court, and the motion was heard before the chancellor on June 24, 2004.  The chancellor ultimately ruled against transferring the case to circuit court, ruling instead to bifurcate the action.  He  decided he would try "all derivative claim issues as raised by the pleadings and any other strictly chancery matters," "all specific performance claims, if any," and "all claims for rescission asserted by Mathis."  The chancellor stated that after ruling on those issues, he would consider any remaining issues and transfer any issues he deemed to be legal to circuit court.  He also denied ERA's motion to have the issue of subject matter jurisdiction certified for interlocutory appeal.  We granted ERA's request for interlocutory appeal.

## STANDARD OF REVIEW

¶7.	"The standard of review for a ruling on a motion to transfer from chancery court to circuit court, or from circuit court to chancery court, is de novo. . . . Jurisdiction is a question of law, and the Court review[s] questions of law de novo."  *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1178 (Miss. 2004) (citations omitted).

4

**ISSUES**

**I. Whether the Chancery Court Erred in Failing to Transfer the Case to Circuit Court.**

*A. Derivative Claims*

¶8.    Mathis asserts that a number of the issues he raises are equitable because they are derivative in nature.  He concedes that if REP were bringing a direct action against ERA for breach of contract and was seeking compensatory and punitive damages, rather than specific performance of the contract, REP's suit would be an action at law.  He admits that the same would be true for his claims of breach of fiduciary and other duties and claims of tortious interference.  However, he claims that because he is asserting REP's claims derivatively and seeks to have a court of equity fashion a remedy that prevents the other equity member of REP (Irby) from profiting from his wrongful conduct, jurisdiction is proper in chancery court.

¶9.    As Mathis notes, we have previously addressed the propriety of a shareholder bringing a derivative action in the context of a closely-held corporation in ***Derouen v. Murray***, 604 So. 2d 1086 (Miss. 1992).[2]    In ***Derouen***, Leroy Derouen, a fifty-percent shareholder in a closely-held corporation ("H & D Seafood") brought suit against Hudson Murray, the other fifty-percent shareholder who was also the president and director of H & D Seafood, alleging that Murray, through a new business entity, sold and improperly disposed of assets belonging to H & D Seafood. ***Derouen***, 604 So. 2d at 1088-90.  In the complaint, Derouen sought "an accounting of all assets and monies coming into [Murray's] hands in favor of H & D

---

    [2] Though jurisdiction was never challenged in ***Derouen***, we note that the action was brought in chancery court.

Seafood, Inc. and a declaration declaring and paying over to plaintiff a fifty percent interest in all said monies as dividends." *Id*. at 1089-90. On appeal, this Court noted that although Derouen did not call his action a shareholder's derivative action, he charged Murray with a breach of his fiduciary duty of fair dealing to the corporation, a violation of Murray's duties owed primarily to the corporation and only derivatively owed to Derouen. *Id*. at 1091. In *Derouen*, we acknowledged that "our law impresses upon derivative actions certain pre-trial procedural requisites over and above the norm," under Miss. Code Ann. § 79-4-7.40 (Rev. 1989). *Id*. In a footnote, this Court noted that other jurisdictions have debated "whether an action such as this may be brought as well as a direct action" and decided that Mississippi would take the view that:

> [i]n the case of a closely held corporation . . ., the [chancery] court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id*. at 1091, n.2 (quoting American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 (1994)).

¶10. ERA challenges Mathis's assertion that this is a derivative action. ERA notes that Mathis has made no attempt to comply with prerequisites for bringing a derivative action in Mississippi;[3] he has brought REP's derivative claims as a direct action; and he seeks an individual recovery on REP's claims. ERA argues that because Mathis is seeking only an

---

[3] The prerequisites for bringing a derivative action under the Mississippi Limited Liability Company Act are found in Miss. Code Ann. §§ 79-29-1101 to -1104.

6

individual recovery in this action, he is clearly not asserting these claims for the benefit of REP, the business entity. ERA further argues that even if *Derouen* can be read as allowing a shareholder to bring derivative claims in a direct action, it should not be read as allowing a shareholder in a closely-held corporation to bring a direct action, solely for his own benefit, and maintain the suit under the guise of being a shareholder's derivative suit. We note that in the *Derouen* case, Derouen was merely seeking to recover from Murray, as a dividend, his fifty-percent interest in proceeds that should have gone to the business rather than Murray himself, *Id*. at 1089-90, yet Mathis seeks to exclude Irby, the other equity member of REP, from sharing in any recovery.

¶11. We agree with Mathis's assertion that a true stockholder derivative action is a suit in equity which confers jurisdiction on the chancery court. However, unlike the plaintiff in *Derouen*, who merely sought his fair share of the proceeds owed to the corporation, Mathis is asserting his own personal claims, in addition to the derivative claims of REP, in a direct action that may benefit him alone, to the exclusion of the other equity owner in REP. Based on these facts, we must conclude that, as to the derivative claims through which Mathis seeks compensatory and punitive damages, he is pursuing a direct legal action rather than a true shareholder's derivative action.

*B. Whether the Issues in Mathis's Complaint Required Transfer of the Case to Circuit Court.*

¶12. ERA argues, based on a recent line of cases from this Court, that the chancellor was without jurisdiction to hear this matter, was required to transfer this case from chancery to circuit court, and committed reversible error in failing to grant a transfer. *See*, *e.g.*, *Copiah*

*Med. Assocs. v. Mississippi Baptist Health Sys.*, 898 So. 2d 656 (Miss. 2005); *Crosby*, 870 So. 2d 1175; *Briggs & Stratton Corp. v. Smith*, 854 So. 2d 1045 (Miss. 2003); *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948 (Miss. 2000); *Southern Leisure Homes, Inc. v. Hardin*, 742 So. 2d 1088 (Miss. 1999). This argument is based in large part on the fact that in those cases, as here, punitive damages were sought, a strong indicator that the matter is a legal action rather than an equitable one. *Crosby*, 870 So. 2d at 1179 (stating that where a complaint seeks both actual and punitive damages, the "remedy is clearly legal rather than equitable in nature."). ERA's position is also based on this Court's prior recognition that "if some doubt exists as to whether a complaint is legal or equitable in nature, that case is better tried in circuit court" since circuit courts have general, rather than limited, jurisdiction. *Burnette*, 770 So. 2d at 952.

¶13.    ERA claims that *Crosby*, a case in which we reversed a chancellor for failing to transfer to circuit court, is "substantially indistinguishable" from the instant case and should be considered as controlling law. In *Crosby*, Jacqueline Crosby and more than 350 other plaintiffs filed suit in chancery court against various insurance companies and their agents for selling them insurance policies using allegedly fraudulent, deceptive, or otherwise improper sales practices. *Crosby*, 870 So. 2d at 1178. The plaintiffs raised claims of "fraud, fraudulent inducement, breach of duty of good faith and fair dealing, tortious breach of contract, breach of fiduciary duty, assumpsit, unjust enrichment, negligence, gross negligence, [] and conversion" and requested relief in the form of a "constructive trust, accounting, injunctive relief, actual damages and punitive damages." *Id*. at 1178-79. In

8

finding that the chancellor erred in refusing to transfer the action to circuit court, we stated that "[t]he record clearly shows that each and every one of Crosby's claims, even the equitable claims of unjust enrichment and constructive trust, arise from the sale and alleged breach of an insurance contract" and that her claims were tied to the existence of a contractual relationship. *Id*. at 1182. We also reasoned in *Crosby* that "it is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction," especially in light of the fact that it is in circuit court that the constitutional right to a jury trial is preserved. *Id*. (Citations omitted). ERA also contends that *Copiah*, which was handed down after *Crosby*, affirmed the reasoning of *Crosby* in mandating a transfer from chancery to circuit court.[4]

¶14. Mathis attempts to prevent the application of our holding in *Crosby* to the present case by arguing that his complaint is a mixture of equitable and legal issues, but we find that

---

[4] In *Copiah*, Copiah Medical Associates ("CMA") filed a breach of contract claim against Mississippi Baptist Health Systems ("Baptist") in circuit court. *Copiah*, 898 So. 2d at 658. Baptist later filed a complaint against CMA in chancery court, seeking specific performance of a lease agreement repudiated by CMA. *Id*. at 658-59. CMA then moved to amend its complaint in circuit court to add a declaratory action that the lease was void. *Id*. at 659. After both parties filed several motions in both courts, CMA filed an amended motion to transfer the action filed by Baptist in chancery court and requested that the chancellor either dismiss or stay such action pending the outcome of the circuit court action, which the chancellor denied. *Id*. On interlocutory appeal, this Court determined that because the contract breached was a lease agreement rather than a land sales contract, the breach of contract claim was proper in circuit court. *Id*. at 661. The *Copiah* Court also ruled that the claims raised by Baptist in its chancery court complaint "should have been submitted as a compulsory counterclaim in the circuit court action," the circuit court had priority jurisdiction over the complaint filed in chancery court, and transferred the case to circuit court. *Id*. at 663-64.

9

Mathis's causes of action are primarily issues stemming from contractual obligations he contends were not met by the defendants. Breach of contract issues are best heard in circuit court. *See Union National Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004) (citing *Southern Leisure Homes, Inc. v. Hardin*, 742 So. 2d 1088, 1089 (Miss. 1999)). While we have allowed a chancery court to retain jurisdiction over cases involving questions of both law and equity, our more recent cases have held that equitable claims are more appropriately brought before a circuit court when they are connected to a contractual relationship or other claims tied to questions of law. *See Copiah Med. Assocs'n v. Mississippi Baptist Health Systems*, 898 So. 2d 656 (Miss. 2005); *Crosby*, 870 So. 2d at 1175; *RE/Max Real Estate Partners v. Lindsley*, 840 So. 2d 709 (Miss. 2003). In addition, ERA would also be denied the opportunity for a jury trial if Mathis's claims are adjudicated by a chancery court, and plaintiffs should not be allowed to deprive defendants of their constitutional right to a jury trial simply by a choice of forum. *See Crosby*, 870 So. 2d at 1182. The combination of factors pointing to a circuit court as a better choice than a chancery court for the case to be heard convinces us that the chancellor erred by denying the defendants' motion to transfer the case.

## CONCLUSION

¶15. Because Mathis's claims contain questions of law and equity, request punitive damages, and because having the claims adjudicated in chancery court would deprive ERA of the right to a jury trial, we find the chancellor erred in denying the defendants' motion to transfer the case to circuit court. We reverse the chancery court's denial of defendant's

motion and remand with instructions to transfer the case to the Covington County Circuit Court.

¶16. **REVERSED AND REMANDED.**

**SMITH, C.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. COBB, P.J., AND RANDOLPH, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶17. I find that Mathis' complaint asserts equitable claims which confer original jurisdiction on the chancery court; therefore, I would affirm the chancellor's denial of ERA's motion to transfer. For purposes of establishing original equity jurisdiction, Mathis has pleaded claims for an accounting, a constructive trust, and specific performance of a contract to convey real property. Oddly enough, neither ERA nor the majority denies that these claims are equitable in nature or that each is sufficient to confer original jurisdiction on chancery court. The majority takes the position that because some of Mathis' claims are legal in nature, all of his claims must be adjudicated in circuit court. This position ignores prior decisions of this Court which allow chancery courts to adjudicate pendent legal claims once original equity jurisdiction has been established.

*A. Accounting.*

¶18. Even though the derivative claims Mathis seeks to assert directly should be heard in circuit court, the chancery court may retain jurisdiction of this matter if an issue within its original jurisdiction is raised, even though the other issues are legal in nature. *See RE/Max*

11

*Real Estate Partners v. Lindsley*, 840 So. 2d 709, 712 (Miss. 2003) (recognizing that "where there is in a case one issue of exclusive equity cognizance, such an issue can bring the entire case within subject matter jurisdiction of the chancery court and that court may proceed to adjudicate all legal issues as well."); *Tillotson v. Anders*, 551 So. 2d 212, 213 (Miss. 1989) ("Where there appears from the face of the well-pleaded complaint an independent basis for equity jurisdiction, our chancery courts may hear and adjudge law claims."). In this case, Mathis has made a claim against the defendants for an accounting, which he claims is necessarily brought in chancery court.

¶19.   This Court has previously addressed situations where a plaintiff has brought a claim for an accounting to maintain an action in chancery court and has warned that "lower courts should 'be wary of attempts to camouflage as a complicated accounting what is in essence an action at law for breach of contract.'" *Briggs & Stratton Corp. v. Smith*, 854 So. 2d 1045, 1049 (Miss. 2003) (quoting *Thompson v. First Mississippi Nat'l Bank & Mutual Savings Life Ins. Co.*, 427 So. 2d 973, 976 (Miss. 1983)). Mathis acknowledges this Court's admonition against requesting an accounting just to keep a case in chancery court, but he contends he meets the requirements to assert an equitable claim for an accounting, citing *RE/Max*.

¶20.   In *RE/Max*, Lindsley filed suit in chancery court against a real estate company for its agent's misappropriation of funds and sought damages for breach of contract, cancellation of the contract, an accounting of funds, and other relief. *RE/Max*, 840 So. 2d at 711. The defendants attempted to have the action transferred to circuit court on the basis that the

12

chancery court was without subject matter jurisdiction; the chancellor denied the motion; and this Court granted defendants' petition for interlocutory appeal. *Id*. at 710. On appeal, this Court articulated three factors necessary for determining "whether a court of equity has jurisdiction over matters of account, (1) the need of discovery, (2) complicated character of the accounts, and (3) the existence of a fiduciary or trust relation." *Id*. at 712 (citation omitted). In *RE/Max*, we found that all three elements for an equitable accounting existed in Lindsley's claim; the chancery court therefore had original jurisdiction of the accounting; and the chancery court could exercise its pendent jurisdiction to hear Lindsley's remaining legal claims.[5] *Id*. at 713-14. This Court reasoned that an accounting should be heard in chancery rather than circuit court because "chancery courts have historically had jurisdiction over claims for accounting," are "more adept at handling this sort of matter," and an accounting was needed in the instant situation "to determine where the money is and what form it now assumes so that the court may decide the best way for Lindsley to recover the money, if any, that she is due." *Id*. at 713. We also noted that jurisdiction was proper in chancery court "because it is in the best position to award appropriate relief in the form of a constructive trust or an equitable lien, should one of those [] be required." *Id*. at 714.

¶21. Under *RE/Max*, Mathis is entitled to an equitable accounting if he can show a need for discovery, the complicated character of the accounts, and the existence of a fiduciary or

---

[5] The *RE/Max* Court reiterated that chancery courts have historically had jurisdiction over suits for an accounting and were the proper courts for such actions yet acknowledged that the Mississippi Constitution grants chancery and circuits courts concurrent jurisdiction over "suits involving inquiry into matters of mutual accounts." *Id*. at 711 (citing Miss. Const. art. 6, § 161).

trust relationship. *Id*. at 712. As to the first requirement, Mathis has averred that the defendants' actions "have been conducted, in large part, to the exclusion of the knowledge of Mathis, and discovery is needed to uncover the true scope of the scheme and conspiracy perpetrated on" him. Mathis has specifically pleaded the necessity of discovery, the first requirement for an accounting under *RE/Max*.

¶22. Regarding the second requirement for an accounting, the complicated character of accounts, Mathis has alleged that four individual and three corporate defendants have converted both hard assets and real estate listings that belonged to REP and have used those assets to their advantage and to the exclusion of REP. Mathis seeks full restitution from the various defendants for any commissions they earned and any money they received as a result of breaching their fiduciary duties to him and/or REP. To adequately determine the actual loss to REP and/or Mathis regarding this claim, the chancellor would have to find out which, if any, defendants actually converted any assets/opportunities of REP, where those various assets were diverted, and how much, if any, each defendant has profited from the conversion and/or breach of fiduciary duty. I find that Mathis has shown that an accounting is necessary to sort out how various assets were diverted from REP and to what extent the named defendants have profited from breaching the fiduciary duties they owed to REP. As this Court noted in *RE/Max*, an "accounting may reveal that some of the funds have been used to purchase assets for the benefit of the defendants or assets over which the defendants now exert ownership" and maintaining the action "in chancery court will better allow [Mathis'] prayer for relief to be modified according to the results of the accounting." *Id*. at 714.

¶23. The third requirement for an accounting, as articulated in *RE/Max*, is "the existence of a fiduciary or trust relation." *Id*. at 712. Mathis alleged in his complaint that he was an equity member of REP with Chip and Pamela Hill, that Irby later purchased the Hills' equity interest in REP, and that the Hills remained as employees and/or agents of REP. He then alleged that the fiduciary relationship which arose from being equitable owners of REP was breached by the Hills, Irby, and the other defendants in converting the assets and opportunities of REP to form REP-Central and REP-Pine Belt and in profiting from those actions. It is clear from these allegations that Mathis has sufficiently pleaded the existence of a fiduciary relationship, thus meeting the third requirement for an equitable accounting.

¶24. Mathis has sufficiently pleaded his entitlement to an accounting, as his complaint complies with all three of the requirements articulated in *RE/Max*. Unlike the situation in *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004), where all of the plaintiffs' claims were based on the existence of an insurance contract, or *Briggs*, where the plaintiff attempted to initiate an accounting against himself to show that he did not misuse inventory or parts and that his contract with the defendants was cancelled in bad faith, Mathis has shown the existence of a fiduciary relationship and that an accounting is necessary to track and recover the assets, and profits arising therefrom, which he alleges were converted by the various defendants. Because the chancery court has original jurisdiction of Mathis'

15

claim for an accounting, it may also retain pendent jurisdiction[6] over his remaining legal claims.

        B.     *Constructive Trust.*

¶25.    Mathis also pleaded for a constructive trust arising from equitable conversion of property, an equitable remedy that he claims confers jurisdiction on the chancery court. In *McNeil v. Hester*, 753 So. 2d 1057, 1064 (Miss. 2000), we stated that "[a] constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." This Court has defined a constructive trust as:

> one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*McNeil*, 753 So. 2d at 1064 (citing *Saulsberry v. Saulsberry*, 223 Miss. 684, 690, 78 So. 2d 758, 760 (1955)). The *Saulsberry* Court stated that although the mere existence of a confidential or fiduciary relationship alone does not create a constructive trust, "an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices [sic] generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust," and cautioned courts against limiting "the rule or the scope of its application by a narrow definition of fiduciary or confidential

---

[6] "A claim invokes the court's pendent jurisdiction if it 'arise[s] out of the same transaction or occurrence as the principal claim or, as others put it, out of a common nucleus of operative fact." *Id*. at 714 (citations omitted).

relationships protected by it." ***Saulsberry***, 78 So. 2d at 760. In ***Saulsberry***, the plaintiff averred that the defendant made an oral promise to the decedent to execute a note and deed of trust to secure the purchase of land yet had no intention of performing on that promise, that the defendant and decedent had a confidential relationship, that the defendant gained an advantage by the decedent's reliance on defendant's representations, and that the defendant was unjustly enriched by his actions. ***Id***. at 761. On appeal, we held that the plaintiffs sufficiently pleaded for a constructive trust in their amended bill of complaint and overruled the chancellor's demurrer of the bill. ***Id***.

¶26.    In the instant case, Mathis alleged, inter alia, that Chip Hill represented to him that he (Hill) would transfer his ownership interest in certain real property to Mathis if Mathis would lend him additional funds. Mathis also alleged the existence of a fiduciary relationship between himself and Hill, as they were equity members of REP. Mathis alleged that he detrimentally relied on Hill's representations by lending him additional funds, and that Hill has been unjustly enriched, since he has failed to repay the loan and transfer the subject property. These allegations are virtually indistinguishable from those in ***Saulsberry***, where we found that the plaintiffs sufficiently pleaded a cause of action for a constructive trust. Additionally, this case is factually distinguishable from ***Crosby***, a case where this Court found the chancery court to be without jurisdiction. In ***Crosby***, the plaintiffs' claims for a constructive trust arose "from the sale and alleged breach of an insurance contract," ***Crosby***, 870 So. 2d at 1182, while Mathis' claim is based on the existence of a fiduciary relationship between him, Chip Hill, and other named defendants. Therefore, Mathis has sufficiently

17

pleaded his claim for a constructive trust, an equitable remedy that confers original jurisdiction on the chancery court.

C.    *Specific Performance.*

¶27.    Mathis alleged that Chip Hill breached an agreement to convey real property to him, and he brought a specific performance claim to require Hill to convey the subject property to him.  In ***Roberts v. Spence***, 209 So. 2d 623, 626 (Miss. 1968), which involved the sale of personal property, this Court stated that "ordinarily a court of equity will not attempt to enforce a contract by specific performance where the parties have an adequate remedy at law to recover damages growing out of" a party's failure to carry out a contract's terms. However, our courts have recognized that specific performance "is a particularly appropriate remedy in matters relating to tracts of real property because of the unique nature of real estate." ***In re Estate of Pickett***, 879 So. 2d 467, 471 (Miss. Ct. App. 2004) (citing ***Berryhill v. Hatt***, 428 N.W.2d 647, 657 (Iowa 1988)).  Furthermore, this Court reasoned in ***Copiah Med. Assoc. v. Mississippi Baptist Health Sys.***, 898 So. 2d 656, 660-61 (Miss. 2005), that Baptist's reliance on ***Osborne v. Bullins***, 549 So. 2d 1337, 1339-40 (Miss. 1989) (recognizing that specific performance is a remedy for breach of land sale contracts), as grounds to specifically enforce a lease agreement was misplaced because ***Osborne*** involved a land sales contract rather than a lease-contract.

¶28.    Because Mathis has alleged that Hill contracted to convey specific real property to him  and has breached that contract, specific performance is an equitable remedy that is

18

available to him, due in large part to the uniqueness of real estate. Thus, it was appropriate for the chancery court to assert original jurisdiction over this claim.

   D.   *Punitive Damages and Jury Trial.*

¶29.   ERA argues that because the majority of Mathis' claims seek both compensatory and punitive damages, this case is essentially legal in nature and should be heard in circuit court. *See Crosby*, 870 So. 2d at 1179 (noting that where plaintiff sought actual and punitive damages, the "remedy is clearly legal rather than equitable in nature.") (citation omitted). While **Crosby** and similar cases do speak of circuit courts as being the proper courts to adjudicate a claim for punitive damages, we have also previously held that "chancery courts have the discretion to award legal and even punitive damages as long as the chancery court's jurisdiction has attached." **RE/Max**, 840 So. 2d at 712 (citing **Southern Leisure Homes, Inc. v. Hardin**, 742 So. 2d 1088, 1090 (Miss. 1999)). *See also* **Tideway Oil Programs, Inc. v. Serio**, 431 So. 2d 454, 459 (Miss. 1983) (holding that chancery courts "have the discretionary power to assess punitive damages according to the same substantive standards as apply to our circuit courts."). Because chancery court jurisdiction attached to Mathis' claims for an accounting, constructive trust, and specific performance, it follows that the chancery court has authority to award both compensatory and punitive damages in the instant case.

¶30.   ERA also argues that jurisdiction is only appropriate in circuit court because chancery court does not adequately preserve its right to a jury trial. In **Crosby**, this Court found that the defendant's right to a jury trial, under Miss. Const. Art. 3, § 31, "would be infringed upon

19

if this case were heard in chancery court." *Id*. at 1181. This finding was based on the fact that "[i]n '[c]hancery court, with some few statutory exceptions, the right to jury is purely within the discretion of the chancellor, and if one is empaneled, its findings are totally advisory.'" *Id*. at 1181-82 (quoting *Louisville & Nashville R.R. v. Hasty*, 360 So. 2d 925, 927 (Miss. 1978)). The *Crosby* Court further reasoned that the public policy of allowing a plaintiff "to choose his or her forum does not outweigh [a defendant's] constitutional right to a jury trial." *Id*. at 1182.

¶31. Although the right to a jury trial in this state is substantial, as recognized by *Crosby*, *Hardin*, and other cases, this right is not absolute. *See RE/Max*, 840 So. 2d at 713 ("Though it is true, as defendants assert, that the right to a jury trial shall remain inviolate, this right is not absolute."). The plaintiff in *RE/Max* asserted a claim for an accounting, which is properly heard in chancery court, in addition to a damages claim for breach of contract. *Id*. at 711. Because chancery court jurisdiction attached to the accounting claim, jurisdiction remained proper in that court, even though the defendant would not be entitled to a jury. *Id*. at 713-14. *See Poole v. Gwin, Lewis & Punches, LLP*, 792 So. 2d 987, 990 (Miss. 2001) (recognizing that "there is no right to trial by jury in chancery court."). This Court also stated in *RE/Max* that a defendant's right to a jury trial is balanced against a plaintiff's choice of forum and that "[t]his right is limited only by rules of procedure and fair play," ultimately finding that the plaintiff could properly bring suit in chancery court and that the defendants were not prejudiced by such action.[7] *RE/Max*, 840 So. 2d at 713.

---

[7] This Court stated in *RE/Max*:
Presumably with the knowledge that concurrent jurisdiction between chancery

20

¶32.   *Copiah*, *Crosby*, *Briggs*, and other recent cases make it clear when a claim is legal in nature and the plaintiff seeks compensatory and punitive damages, jurisdiction is appropriate in circuit court; however, *Re/Max* holds that when a plaintiff asserts a claim that is based in equity, such as an accounting or constructive trust, not only may the chancellor retain jurisdiction over the equitable claims, but he may also adjudicate the pendent legal claims. In the instant case, Mathis sufficiently pleaded facts which, if proven, would entitle him to relief in the form of an accounting, constructive trust, and/or specific performance.

¶33.   Because the equitable claims pleaded by Mathis clearly conferred original jurisdiction upon the chancery court, the chancellor also had the authority to retain pendent jurisdiction over the legal claims, including the punitive damages claim, despite that Mathis will not get the benefit of a jury trial. I find that the chancellor did not commit reversible error in denying ERA's motion to transfer, so I must respectfully dissent.

**DIAZ, J., JOINS THIS OPINION.**

---

and circuit court existed for this matter, Lindsley chose to bring her suit for redress in the chancery court. This was her choice and, if proper and fair, must be respected here. *See generally* **New Orleans & N. E.R. Co. v. Gable**, 252 Miss. 605, 611, 172 So. 2d 421, 423 (1965) (We said in the recent case of **Johnson v. Bagby**, Miss., [252 Miss. 125,] 171 So. 2d 327, decided February 1, 1965, that '[a]s yet, litigants have the right not only to choose their forum but frequently the right to choose their adversaries.'). We find that it was indeed proper for Lindsley to bring this suit in chancery court and not unduly prejudicial to require the defendants to defend this suit therein. 840 So. 2d at 713.

21