# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-IA-01458-SCT

*INVESTOR RESOURCE SERVICES, INC., A*
*FLORIDA CORPORATION; BARBARA*
*ARCHULETTA MORELLI, AND THE ESTATE OF*
*BERNECE RIGIROZZI*

*v.*

*MARVIN CATO, CHARLES CATO, LAVERNE*
*CATO AND RAINBOW ENTERTAINMENT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2007 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES W. CRAIG |
| | FRED L. BANKS |
| | JEROME C. HAFTER |
| | ELIZABETH JANE HICKS |
| ATTORNEYS FOR APPELLEES: | JOHN H. DANIELS |
| | WILLIE BAILEY |
| | JAMES P. STREETMAN |
| | DAVID LEE GLADDEN, JR. |
| | BLAYNE THOMAS INGRAM |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 06/25/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This case involves whether a trial court properly excluded an expert from testifying based on her status as a Certified Public Accountant (CPA) and her alleged lack of expert knowledge in derivative actions. Investor Resource Services, Inc., Barbara Morelli, and the

Estate of Bernece Rigirozzi (Investor Resource) filed suit in the Circuit Court of Washington County against Marvin Cato, Charles Cato, Laverne Cato, and Rainbow Entertainment, Inc., (the Defendants) alleging both derivative and individual shareholder claims such as fraud in the inducement and fraudulent misrepresentation.[1] Prior to trial, the Defendants filed a motion in limine to exclude Investor Resource's expert witness, Glenda B. Glover, Ph.D. After a hearing on the matter, the trial court granted the Defendants' motion to exclude Dr. Glover as an expert witness. The trial court based its exclusion on two factors: (1) Dr. Glover was not a properly licensed certified public accountant at the time she submitted her expert report and gave deposition testimony, and (2) Dr. Glover was not an expert in the field of derivative actions. The trial court also denied Investor Resource's motion for reconsideration.[2] Thereafter, Investor Resource filed a petition for interlocutory appeal with this Court. On September 25, 2007, this Court granted the petition for interlocutory appeal and stayed the trial court proceedings.

**DISCUSSION**

---

[1] All the plaintiffs in this action alleged in their first amended complaint that they were given leave to intervene in another case styled as *Michael I. Less, Joseph T. Getz, Clifton M. Lipman, and O.T. Marshall IV, individually and derivatively, Plaintiffs v. Marvin Cato, individually, Charles Cato, individually, Laverne Cato, individually, and Rainbow Entertainments, Inc., a Mississippi corporation* (Cause No. C12002-455). The plaintiffs joined the allegation in the original lawsuit and sought damages and other relief for alleged self-dealing and mismanagement by the officers, directors, controlling shareholders and agents of Rainbow Corporation. On September 16, 2004, the plaintiffs' case was severed from the original lawsuit.

[2] The trial court based the denial of the motion to reconsider on the theory that the Mississippi Rules of Civil Procedure do not provide for a motion to reconsider, and that Investor Resource's motion did not fall within the confines of Rule 60. Investor Resource also requested clarification to determine whether Dr. Glover, in the alternative, was excluded as a fact witness.

**Whether the circuit court erred by granting the Defendants' motion in limine and excluding the expert testimony of Dr. Glover based on her status as a certified public accountant and her alleged lack of expertise in derivative actions.**

¶2. The standard of review for the admission or exclusion of evidence, such as expert testimony, is an abuse of discretion. *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 946 (Miss. 2008); *see also* **Miss. Trans. Comm'n v. McLemore**, 863 So. 2d 31 (Miss. 2003).

¶3. Rule 702 of the Mississippi Rules of Evidence concerns the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

¶4. In *McLemore*, this Court adopted the test to determine admissibility of expert witness testimony stated in *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and as modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *McLemore*, 863 So. 2d at 35. Expert testimony is admissible, pursuant to Rule 702, if it is relevant and reliable. *Id*. at 38; *Tunica County v. Matthews*, 926 So. 2d 209, 213 (Miss. 2006). In other words, (1) "the witness must be qualified by virtue of his or her knowledge, skill, experience or education," and (2) "the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue." *McLemore*, 863 So. 2d at 35. However, in *McLemore*, this Court noted that Rule 702 "does not relax the traditional standards for

determining that the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge." *Id*. (quoting M.R.E. 702 cmt.). The trial judge is the gatekeeper who assesses the value of the testimony. *Tunica County*, 926 So. 2d at 213. (citing *McLemore*, 863 So. 2d at 39). "To be relevant and reliable, the testimony must be scientifically valid and capable of being applied to the facts at issue." *Id*. (citing *McLemore*, 863 So. 2d at 36).

¶5. This Court and the Mississippi Court of Appeals have reversed and remanded cases in which the trial court erroneously included or excluded expert testimony. Indeed, this Court, in *McLemore*, the foremost Mississippi case adopting the modified *Daubert* standard for the admissibility of expert witness testimony, reversed and remanded for a new trial, finding that the trial court had erred by admitting the expert testimony of an appraisal witness. *McLemore*, 863 So. 2d at 43. *See Giannaris v. Giannaris*, 960 So. 2d 462, 471 (Miss. 2007) (determining, based on modified *Daubert* analysis, that the "trial court erred in granting any weight to [the expert's] testimony, as it lacked sufficient reliability under Miss. R. Evid. 702" and the admission of the testimony "amounted to an abuse of discretion"); *Brown v. Mladineo*, 504 So. 2d 1201 (Miss. 1987) (holding that the trial court had erred by excluding the expert testimony of a doctor ). *See also Int'l Paper Co. v. Townsend*, 961 So. 2d 741, 760 (Miss. Ct. App. 2007) (determining that the trial court had erred by the admission of expert testimony where the trial court had denied the voir dire of the expert, and the expert was not qualified to testify on various issues based on his testimony); *Partin v. N. Miss. Med. Ctr., Inc.*, 929 So. 2d 924, 931 (Miss. Ct. App. 2005)

4

(reversing in part a grant of summary judgment as to one doctor, finding the trial court had erred for failing to admit expert medical witness testimony).

### 1. Relevance.

¶6. Mississippi Rule of Evidence 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." M.R.E. 401. Rule 401 favors admission of the evidence if it has any probative value. *McLemore*, 863 So. 2d at 40 (citing *Holladay v. Holladay*, 776 So. 2d 662, 676 (Miss. 2000)). "[T]he threshold for admissibility of relevant evidence is not great. Evidence is relevant if it has any tendency to prove a consequential fact." *Id*. (quoting *Whitten v. Cox*, 799 So. 2d 1, 15 (Miss. 2000)). Dr. Glover's testimony regarding the actions of the corporate officers and directors, the damages, and the methods she applied to determine the damages incurred by the actions of the corporate officers and directors was relevant in this lawsuit. Accordingly, Dr. Glover's reports and deposition meet the first prong of the modified *Daubert* standard. *Daubert*, 509 U.S. at 589; *McLemore*, 863 So. 2d at 40. Indeed, the trial court determined that Dr. Glover's reports and testimony were relevant. Notwithstanding the finding that Dr. Glover's testimony was relevant, the trial court determined that her testimony was unreliable.

### 2. Reliability.

¶7. In *Adcock*, this Court analyzed the reliability of the expert witness and stated:

> The party offering the expert testimony also must show that the expert's opinion is based upon scientific methods and procedures, not unsupported speculation. *Id*. at 36 (citing *Daubert*, 509 U.S. at 590). Factors to consider may include "whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether . . . there

5

is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance" within the expert's particular field. *McLemore*, 863 So. 2d. at 37 (citing *Daubert*, 509 U.S. at 592-94).

*Adcock*, 981 So. 2d at 947. Although there are many factors to consider in the analysis of whether an expert's opinion is reliable, none of the factors is steadfast in every case. In other words, the factors are used as guidance, and all need not be applied in every case, but should be applied only as appropriate for each particular case. *McLemore*, 863 So. 2d at 40.

### A. Dr. Glover's status as a certified public accountant.

¶8.     The trial court excluded Dr. Glover's testimony, in part, based on the fact that she had allowed her CPA license to lapse and was not licensed as an active CPA at the time of her reports and deposition testimony. In her two written reports, Dr. Glover stated that she was a CPA. In her deposition testimony, Dr. Glover stated that she was a CPA, however, she no longer practiced as a CPA. The trial court excluded Dr. Glover's testimony, in part, due to her alleged false assertions of being a CPA in her reports and depositions and in alleged violation of the Mississippi Code.

¶9.     Investor Resource argues that there is a distinction between the qualifications of a witness to provide expert testimony and a witness's certification to practice a profession. To support its argument, Investor Resource relies on *Watts v. Lawrence*, 703 So. 2d 236 (Miss. 1997). In *Watts*, a case predating our adoption of *Daubert* analysis, this Court upheld the expert testimony of a retired real-estate broker on matters of real-estate property value even though the expert no longer had a real-estate appraiser license. *Id*. at 238-29. This Court found that "[o]ur Rules of Evidence require only that an expert witness be qualified by

6

knowledge, skill, experience, training, or education. *Id*. at 238. In that case, this Court held that the expert was qualified under Rule 702 based on his knowledge and experience in the field. *Id*. at 239. *See also* **King v. Murphy**, 424 So. 2d 547, 550 (Miss. 1982) (although ultimately excluding the expert's testimony on other ground, stating that an expert's testimony should not be excluded simply because he was not licensed to practice in Mississippi); **Blake v. Clein**, 903 So. 2d 710 (Miss. 2005).

¶10.    More recently, this Court handed down **Kilhullen v. Kansas City Southern Railway**, 2009 Miss. LEXIS 87 (Miss. Feb. 26, 2009). In **Kilhullen**, this Court reversed and remanded the Court of Appeals decision to affirm the trial court's grant of summary judgment in favor of Kansas City in a wrongful-death action. The trial court struck Kilhullen's affidavit from Jimmy Halfacre, a registered engineer, finding that accident reconstruction is a specialized field and that Halfacre lacked the requisite knowledge, expertise, or training. *Id.* This Court looked beyond certification and determined that the expert had requisite "professional qualifications" to give his opinion. *Id*. This Court held:

> In rejecting Halfacre's affidavit due to his lack of "specialized knowledge, training or expertise in the field of accident reconstruction[,]" this Court finds that the circuit court abused its discretion. Given his applied engineering expertise, classification as an accident reconstructionist was not necessary, *see* **Pounders**, 970 So. 2d at 146; **Sacks**, 991 So. 2d at 622, and this Court concludes that Halfacre's affidavit satisfied Mississippi Rule of Evidence 702.

**Kilhullen v. Kan. City S. Ry.**, 2009 Miss. LEXIS 87, 12-13 (Miss. Feb. 26, 2009).

¶11.    Also, in **University of Mississippi Medical Center v. Pounders**, 970 So. 2d 141, 146 (Miss. 2007), this Court stated that "a witness need not be a specialist in any particular profession to testify as an expert. The scope of the witness's knowledge and experience, and

7

not any artificial classification, governs the question of admissibility." (Citations omitted.) Accordingly, this Court allowed a neurologist to testify concerning pulmonary issues. *Id*. *See also* **Sacks v. Necaise**, 991 So. 2d 615, 622 (Miss. Ct. App. 2007) (upholding the admission of Jenner as an expert on whether a drug was administered properly even though she "had not been a practicing nurse in twenty years and was not a certified chemotherapy nurse. However, neither of these facts precluded her from testifying as to her knowledge on the subject. Jenner was a licensed nurse and was familiar with the current standards of chemotherapy administration."). *Cf.* **Watts v. Radiator Specialty Co.**, 990 So. 2d 143, 150 (Miss. 2008) (affirming the trial court's exclusion of an expert witness's testimony on general and specific causation that benzene causes non-Hodgkin's lymphoma and that a liquid solvent containing benzene caused the plaintiff's non-Hodgkin's lymphoma as being scientifically unreliable); **Giannaris v. Giannaris**, 960 So. 2d 462 (Miss. 2007) (determining that the admission of a clinical social worker's expert testimony was error where the witness had unrecorded sessions with the child and only five weeks' training).

¶12. Here, Dr. Glover's stated purpose as an expert was "to assess and testify concerning the damages incurred by Investor Resource Services, Inc. and other minority shareholders resulting from the actions of the majority shareholders of Rainbow Entertainment, Inc." To that end, Dr. Glover provided her opinion on whether the corporate directors and officers of Rainbow had fulfilled their duties properly and whether their actions had resulted in damages to the corporation and the shareholders. Dr. Glover stated in her reports and testified in her deposition that she was a CPA and had worked as a CPA in her career for a number of employers. Furthermore, she testified that she used all of her CPA skills in her position as

8

Dean of the College of Business of Jackson State University. When Dr. Glover submitted her reports and testified at her deposition, her CPA license had lapsed. There is no dispute that Dr. Glover held a CPA license at one time. The only problem in this case was that Dr. Glover was not current in her licensure at the time of her reports and depositions. That is an issue between Dr. Glover and the Mississippi State Board of Public Accountancy, but does not concern this Court for the purposes of this appeal.

¶13. As to her qualifications, Dr. Glover had more than twenty years of corporate and academic experience in the business arena. She holds a bachelor of science degree in mathematics from Tennessee State University. She also has a master of business administration degree in accounting from Clark Atlanta University, a doctor of philosophy degree in business, economics, and policy from George Washington University, a doctor of jurisprudence degree from Georgetown University Law Center, and she had obtained her license as a certified public accountant.

¶14. Dr. Glover's work experience included working as an accountant at Arthur Anderson & Co. In addition, she worked at the Potomac Electric Power Company and then as a senior vice president and chief financial officer for Metters Industries, Inc. Later, Dr. Glover worked in academia as an assistant professor of accounting at Howard University. In 1994, Dr. Glover accepted her current position as Dean of the College of Business at Jackson State University.

¶15. Dr. Glover served on corporate boards. She sat on the board of the Student Loan Corporation, which is a publicly traded company, as the chairperson for the audit committee, a member of the compensation committee, and the financial expert for the audit committee

9

and board.  Further, Dr. Glover served on the boards of directors of the Lenox Group, Union Planters Bank, and the Jackson Airport Authority.

¶16.    To the extent that Dr. Glover was excluded as an expert witness based on her failure to maintain an active CPA license, the issue is without merit.  Dr. Glover's purpose as an expert was to testify as to damages due to the deeds of the corporate officers.  The fact that she did not have an active CPA license at the time of her reports and deposition is not crucial to her qualification to give an opinion of damages based on the actions of shareholders.  Her qualifications in education, business, and academia are sufficient to support  her opinions.

### B.    Expertise in derivative suits.

¶17.    The trial court also based the exclusion of Dr. Glover as an expert witness on her lack of education, experience, and training in derivative suits and her lack of understanding of derivative suits.  The trial court stated:

> Having reviewed Glenda B. Glover's qualifications, this Court finds that although Ms. Glover's testimony may be relevant, Ms. Glover is not qualified to give expert testimony in the present case.  This decision is based on Ms. Glover's lack of education, experience, and training, in derivative actions, the lack of reliability of Ms. Glover's testimony, and the fact that Ms. Glover has held herself out to be a Certified Public Accountant in violation of Miss. Code Ann. § 73-33-1.

> The Court finds Ms. Glover lacks sufficient education, experience, or training in the area of derivative actions.  This fact is evidenced by her deposition testimony and in her reports in which she demonstrates a failure to understand how damages in derivative actions are distributed.  This indicates a fundamental failure to grasp the very nature of a derivative action.  The Court finds the [sic] Ms. Glover's lack of knowledge regarding derivative actions makes her testimony and opinions in this case unreliable.

¶18.    Dr. Glover completed two written reports and a deposition.  In her first report, dated November 2006, she stated in the overview section that "I have been asked to assess and

10

testify concerning the damages incurred by Investor Resource Services, Inc. and other minority shareholders resulting from the actions of the majority shareholders of Rainbow Entertainment, Inc." In the description-of-assignment section, Dr. Glover stated that "This report analyzes the damages incurred by Investor Resource Service, Inc. and the other minority shareholders resulting from the actions and omissions of the majority shareholders and directors of Rainbow Entertainment, Inc."

¶19. In her February 2007 deposition testimony, Dr. Glover discussed her understanding of a derivative action. The following exchange occurred:

[Defense Counsel]: Good. Well, and you make an excellent point. What is your understanding of the damages that are assessed in derivative cases and to whom they are assessed?

A. Well, my understanding is, shareholders sue in a derivative action. And they sue for damages – well, they sue for damages or some element that they feel is owed.

[By Defense Counsel]

Q. To whom? What is your understanding?

A. To whom?

Q. Yes, ma'am. To whom do the damages flow, if they are successful?

A. To shareholders.

Q. To the shareholders?

A. Uh-huh (affirmative).

Q. Not to the corporation, but to the shareholders; is that your understanding?

A. Well, the shareholders – the shareholders sue on behalf of the corporation.

11

Q.    Okay. Is that what you have said in your report.

[Plaintiff's Counsel] Object to the form, because the report speaks for itself – speaks for itself. Pardon me.

[Defense Counsel]    That's okay.

[By Defense Counsel]

[Q.]    Who do you conclude, based on your report, Exhibit 2, should receive damages in this case if the plaintiffs are successful?

A.    The minority shareholders.

Q.    The minority shareholders?

A.    Yes.

Q.    Thank you, ma'am.

In her deposition testimony, Dr. Glover also stated that she had not authored any article or conducted any studies on derivative claims.

¶20.    After to her first report and the deposition testimony, Dr. Glover provided a second, modified, written report in June 2007. In the overview section, Dr. Glover stated that her purpose was to assess and testify about "the actions of Marvin Cato and Charles Cato as majority shareholders, officers, and directors of Rainbow Entertainment, Inc. ("Rainbow"), and the damages incurred by Rainbow, Investor Resource Services, Inc. and other minority shareholders of Rainbow resulting from those actions." Further, in the description-of-assignment section, Dr. Glover stated:

> This report analyzes the damages incurred by Rainbow Entertainment, Inc., by Investor Resource Service [sic], Inc. and the other minority shareholders of Rainbow resulting from the actions and omissions of Marvin Cato, Charles Cato and Laverne Cato as majority shareholders, directors and officers, of

12

Rainbow Entertainment, Inc. It also analyzes whether the Catos breached their duties as corporate officers, directors, and majority shareholders, by authorizing self-dealing transactions.

¶21. Notwithstanding Rainbow's characterization of Dr. Glover as a derivative expert, Investor Resource argues that Dr. Glover was offered as a damages expert, not as a derivative action expert. We agree. Dr. Glover also defined her role in her deposition testimony as a damages expert, not a derivative-action expert, when she stated:

> I'm not here as a derivative – I'm here as a damage expert and to tell you about what goes on in a corporate board room, how the corporate – how the corporate officer should act, the duty they have to shareholders. That's not necessarily a derivative in nature, but it's a shareholder. That's – I'm just – I'm here as an expert on these types of – of information.

¶22. In keeping with her role as a damages expert, part of Dr. Glover's reports were compilations of financial documents, received and expended funds, and other corporate documents from Rainbow. Dr. Glover reviewed available Rainbow documents and compiled the information into schedules. These schedules included the outstanding shares of stock in Rainbow; payments received by Rainbow from Greenville Riverboat, LLC; payments made to Charles and Marvin Cato; payments made for corporate jet service; payments of dividends; cash disbursements from January 1, 2001, through December 31, 2004; and cash disbursements from January 1, 2005, through December 31, 2006, including a listing of missing checks.

¶23. Indeed, the majority of the content in Dr. Glover's two reports centers on the actions taken by the members of the Cato family, as officers and shareholders of Rainbow, and the impact of their actions and expenditures of corporate funds on Rainbow and Investor Resource as a whole.

13

¶24. According to her report, Dr. Glover also considered various corporate documents such as the bylaws, a private-placement memorandum, legal pleadings, bank statements, corporate minutes, an agreement with Greenville Riverboat, financial statements, federal income tax returns, expense reports, and other documents to complete her determination as to any damages which resulted to Rainbow, Investor Resource, and minority shareholders by the actions of the corporate officers.

¶25. The trial court excluded Dr. Glover's expert testimony on the basis that she had "demonstrated a failure to understand how damages in derivative actions are distributed." Investor Resource contends that Mississippi caselaw has held that, when dealing with a closely held corporation, damages may be awarded directly to minority shareholders. We agree.

¶26. In *Fought v. Morris*, 543 So. 2d 167, 169 (Miss. 1989), this Court stated that a closely held corporation "is a business entity with few shareholders, the shares of which are not publicly traded." In addition, a closely held corporation "operates as a small business enterprise where the shareholders, directors, and managers often are the same persons." *Id*. at 170. The Court also stated that in a closely held corporation "where a majority stockholder stands to benefit as a controlling stockholder, the majority's action must be 'intrinsically fair' to the minority interest." *Id*. at 171.

¶27. In *Derouen v. Murray*, 604 So. 2d 1086, 1088 (Miss. 1992), Derouen and Murray were coshareholders in H & D Seafood Corporation (H & D). Derouen filed suit against Murray in an individual capacity, challenging actions by Murray in his capacity as a corporate officer. *Id*. This Court affirmed the trial court's finding as to a release on a

14

personal claim against Murray. *Id.* at 1090. However, this Court determined that Derouen's

claim, that Murray, as a president and director of H & D, had breached his duties owed to the

corporation, was a shareholders' derivative action in nature. *Id.* The Court also determined

that, even though Derouen had failed to identify his action as a shareholder derivative suit,

nonetheless, the derivative claim was tried by implied consent. *Id.* at 1090-91. This Court

stated that "a derivative action is an asset of the corporation, one, to be sure, that the

corporation through its directors and officers may deal with as any other corporate asset."

*Id.* at 1091. However, the Court, in a footnote, noted that, in some instances involving

closely held corporations, the chancery court, in its discretion, may treat a derivative action

as a direct action and permit individual recovery. *Id.* n.2. Specifically, this Court stated:

¶28.    We take the view of the Principles of Corporate Governance § 701(d):

> d) In the case of a closely held corporation . . . , the . . . court in its discretion
> may treat an action raising derivative claims as a direct action, exempt it from
> those restrictions and defenses applicable only to derivative actions, and order
> an individual recovery, if it finds that to do so will not (i) unfairly expose the
> corporation or the defendants to a multiplicity of actions, (ii) materially
> prejudice the interests of creditors of the corporation, or (iii) interfere with a
> fair distribution of the recovery among all interested persons.
>
> The principal effect of this course would be to exempt plaintiff from these
> procedural hoops. The Court below did not exercise its discretion regarding
> these matters, as it did not consider the derivative claims at all.
>
> All of this refers but to the form and procedure for litigating certain substantive
> claims and, thus, in no way impugns our conclusion in Part III above.

*Id.* at 1091 n.2. *See also ERA Franchise Systems, Inc. v. Mathis*, 931 So. 2d 1278, 1281

(Miss. 2006). The trial court did not view the suit as derivative in nature and, therefore, it

15

never applied the appropriate law. *Id*. at 1092. This Court reversed and remanded for further proceedings based on the derivative claims. *Id*. at 1092.

¶29.   Furthermore, finding that an expert's testimony should be admitted into evidence does not preclude the trial court from exercising its discretion to limit the expert evidence. *See Partin v. N. Miss. Med. Ctr., Inc.*, 929 So. 2d 924, 931 (Miss. Ct. App. 2005) ("At trial, the jury may decide to discredit [the expert's] opinions, or the court, upon voir dire and tender of [the expert] as an expert, may limit the matters to which he may testify"). Likewise, the trial court also has discretion to limit jury instructions. In *Missala Marine Services v. Odom*, 861 So. 2d 290, 294 (Miss. 2003), a closely held corporation freeze-out case, this Court held that the plaintiff had to provide substantial proof of damages in order for a jury to have a foundation to assess  any loss.   This Court also set forth the standard of review for jury instructions and stated, in part:

> However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.

*Missala*, 861 So. 2d at 297 (quoting *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000)).

¶30.   Investor Resource also contends that its claims are not solely derivative in nature. In the original complaint, which was incorporated by reference into the amended complaint, Investor Resource alleged individual shareholder claims such as fraud in the inducement and fraudulent misrepresentation. Provided there was an adequate foundation for an assessment of damages, these types of claims would award damages on an individual basis rather than in a derivative capacity to the corporation.

16

¶31. We find that the trial court abused its discretion by excluding the expert testimony of Investor Resource's expert, Dr. Glover. The reports and deposition testimony were relevant and were based on established accounting principles and corporate business principles and practices. The schedules that Dr. Glover compiled from Rainbow's expenditures were based on bank documents and other discovery documents. Dr. Glover also provided her expert opinion on whether there was breach of duty by the officers and directors of Rainbow and, whether Rainbow, Investor Resource, and other minority shareholders had sustained damages from those actions and through the expenditures of Rainbow contained in her compilation of financial documents in the form of schedules. In *Funderburk v. Johnson*, 935 So. 2d 1084, 1107 (Miss. Ct. App. 2006), an expert was allowed to testify as to charts of information that he compiled based on daily cash deposits from a store experiencing cash shortages and an employee's cash deposits into her own checking account. "Generally, questions related to the bases and sources of an expert's opinion affect the weight to be afforded the opinion by the jury, not the admissibility of the opinion." *Funderburk*, 935 So. 2d at 1107-08 (citations omitted). The court also found that charts "allowed the fact-finder to assess the evidence surrounding [the employee's] source of cash and to reach its own conclusion as to the explanation for the cash deposits." *Id*. at 1108. *See also* M.R.E. 1006. Of course, any expert witness would be subject to cross-examination by opposing counsel.

¶32. Here, Glover's misstatement, later corrected in her second report, concerning who received the damages in a minority shareholder derivative suit should not be the basis for her exclusion as an expert witness. Investor Resource's claims were both individual and derivative in nature. Furthermore, Mississippi caselaw holds that in derivative suits

17

involving closely held corporations, the trial court may award damages on an individual basis, provided certain safeguards are met. *Derouen*, 604 So. 2d at 1091 n.2. Additionally, Glover's testimony would have been subject to cross-examination, in which opposing counsel would have had an opportunity to probe any perceived fallacies in her opinion before the jury. The jury could then weigh the credibility of the witnesses, including any expert witness testimony. *Funderburk*, 935 So. 2d at 1107-08.

¶33. The trial court, in addition, can limit expert testimony. To the extent that any perceived incorrect assertion was made as to who receives any potential damages in the lawsuit, the trial court has discretion to review any proposed jury instructions and give only those damage instructions that are correct and have been adequately proven at trial. Accordingly, we find that the trial court should not have excluded Glover's expert opinion.

**CONCLUSION**

¶34. For the foregoing reasons, the Circuit Court of Washington County erred by granting the Defendants' motion in limine and thus excluding the expert testimony of Dr. Glenda Glover. This Court reverses and remands this case to the trial court for proceedings consistent with this opinion.

¶35. **REVERSED AND REMANDED**.

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. DICKINSON, J., CONCURS IN PART AND IN RESULT.**