# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01563-SCT

*CHARLES BURNWATT AND DEBRA
BURNWATT, AS PARENTS AND WRONGFUL
DEATH BENEFICIARIES OF WILLIAM
ALEXANDER BURNWATT, DECEASED, ON
BEHALF OF THEMSELVES AND ALL OTHER
WRONGFUL DEATH BENEFICIARIES OF
WILLIAM ALEXANDER BURNWATT,
DECEASED*

*v.*

*EAR, NOSE & THROAT CONSULTANTS OF
NORTH MISSISSIPPI, PLLC AND JOHN F.
LAURENZO, M.D.*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2008 |
| TRIAL JUDGE: | HON. ROBERT WILLIAM ELLIOTT |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CYNTHIA MITCHELL |
| | JOHN H. COCKE |
| | CHARLES M. MERKEL, III |
| ATTORNEYS FOR APPELLEES | SHELBY KIRK MILAM |
| | S. DUKE GOZA |
| | DION JEFFERY SHANLEY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED AND REMANDED - 09/16/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1. This case is before the Court on interlocutory appeal. After a mistrial and prior to a retrial on the matter, the trial court denied the Burnwatts' renewed motion to exclude an expert witness's testimony. Following that decision, the Burnwatts petitioned this Court for an interlocutory appeal.

¶2. On July 28, 2001, Alex Burnwatt (Alex) had a tonsillectomy at Baptist Memorial Hospital-North Mississippi (BMH-NM). At the time of the procedure, Alex was nine years old. Dr. John F. Laurenzo performed the tonsillectomy. On August 2, 2001, Alex returned to the hospital due to dehydration and died at the hospital the same day.

¶3. On May 8, 2002, Charles Burnwatt and Debra Burnwatt (the Burnwatts), as parents and wrongful-death beneficiaries of William Alexander Burnwatt, deceased, on behalf of themselves and all other wrongful-death beneficiaries of William Alexander Burnwatt, deceased, filed suit against BMH-NM; Ear, Nose & Throat Consultants of North Mississippi, PLLC (ENT Consultants); and Dr. Laurenzo in the Circuit Court of Lafayette County, Mississippi. The complaint alleged that the defendants were negligent in the manner in which the surgery was performed, in failing to require Alex to have further examinations, in failing to stop Alex's bleeding, and in failing to exercise appropriate care. The complaint alleged that Dr. Laurenzo was an agent and employee of ENT Consultants and, as such, ENT Consultants was liable under a theory of *respondeat superior*. Dr. Laurenzo and ENT Consultants filed a joint answer and affirmative defenses. BMH-NM filed a motion to dismiss for failure to state a claim, or, in the alternative, a motion for a more definite statement. Thereafter, Dr. Laurenzo and ENT Consultants filed a motion for summary judgment or, in the alternative, a motion for a protective order.

¶4. On October 3, 2002, the Burnwatts filed an amended complaint. The amended complaint included the previous allegations and included more specific allegations of negligence against BMH-NM. After a hearing, the trial court denied BMH-NM's motion to dismiss, granted BMH-NM's motion for a more definite statement, and ordered the Burnwatts to file an amended complaint with a more definite statement. The trial court also denied Dr. Laurenzo's and ENT Consultants' motion for summary judgment and denied their motion for protective order. Dr. Laurenzo and ENT Consultants filed a joint answer and affirmative defenses to the amended complaint, and BMH-NM filed a separate answer and affirmative defenses.

¶5. The case was set for trial on August 15, 2005. Prior to trial, BMH-NM filed a motion for summary judgment, asserting that no prima facie case had been established, because no expert witness had been designated to testify on the elements of medical negligence. In June 2005, the trial court granted summary judgment in favor of BMH-NM and dismissed it from the lawsuit. The order stated in part:

> At the hearing on this matter, both counsel for the Plaintiff and counsel for the co-Defendants, John Laurenzo, M.D. and the Mississippi Ear, Nose &Throat Consultants of North Mississippi, P.L.L.C., declared that no expert testimony is anticipated from either of these parties, which testimony is critical of Baptist Memorial Hospital-North Mississippi or of the care rendered by the Hospital's nursing staff and/or employees.
>
> . . .
>
> The Court finds that if, as the Plaintiff's counsel has acknowledged, there is no proof that Baptist Memorial Hospital-North Mississippi has committed a negligent act or omission, Baptist Memorial Hospital-North Mississippi is entitled to summary judgment. Furthermore, Plaintiff's counsel has advised the Court that unless Dr. Laurenzo intends to "point the finger" at Baptist

3

Memorial Hospital-North Mississippi personnel in any respect, the Plaintiff confesses the motion for summary judgment.

The dismissal was a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b). No appeal was taken from the decision.

¶6.     Subsequently, the Burnwatts filed a motion for relief from the order and judgment dismissing BMH-NM because Dr. Laurenzo and ENT Consultants later filed a designation of expert witness, Dr. Keith Mansel. This designation of expert witness was filed after the June 2005 trial-court order granting summary judgment and dismissal to BMH-NM. Dr. Laurenzo's expert witness, Dr. Mansel, was to testify that the treatment provided to Alex by Dr. Laurenzo and ENT Consultants had been within the standard of care, that Alex's bleeding was not consistent with exsanguination (loss of blood) being the cause of death, and that Alex's death had been caused by resuscitation efforts.

¶7.     The Burnwatts also filed an alternate motion to exclude the expert testimony of Dr. Mansel and a motion in limine to prevent Dr. Laurenzo and ENT Consultants from any attempt to place blame, either directly or indirectly, on any BMH-NM employee. Later, the Burnwatts filed a motion for partial summary judgment on the issue of apportionment of fault to BMH-NM. The Burnwatts' motion sought to block any attempt by Dr. Laurenzo and ENT Consultants to place any blame or fault on BMH-NM for Alex's death.

¶8.     In June 2007, the trial court granted partial summary judgment in favor of the Burnwatts. The trial court found that, at the time of the grant of summary judgment and dismissal of BMH-NM from the suit, no genuine issue of material fact existed as to any blame or fault by the hospital. Therefore, the trial court determined, in part, that "Dr.

4

Laurenzo and ENT Consultants should not now be permitted to place blame or apportion fault on a co-defendant which the Court had previously adjudicated not to be at fault and accordingly dismissed with prejudice from this law suit." Notwithstanding the grant of partial summary judgment in the Burnwatts' favor, the trial court also held that "[h]owever, this opinion should not be construed as to prevent the Defendants Laurenzo and ENT Consultants from presenting their theory of the case[,]" citing ***Eckman v. Moore***, 876 So. 2d 975 (Miss. 2004).

¶9.     By separate order in June 2007, the trial court denied the Burnwatts' motion for relief from the order and dismissal of BMH-NM from the lawsuit. The trial court determined that relief could not be granted pursuant to Mississippi Rule of Civil Procedure 60(b)(1), (3), or (6). Further, and in consideration of the trial court's grant of partial summary judgment in favor of the Burnwatts on the issue of Dr. Laurenzo's and ENT Consultants' inability to place blame or fault on BMH-NM, the trial court determined the issue to be moot.

¶10.    The case went to trial on June 4, 2007. Dr. Mansel testified on behalf of Dr. Laurenzo and ENT Consultants. The jury received instructions which included the statement that none of the actions of the employees of BMH-NM had contributed to the death of Alex. The jury

5

also was instructed on Dr. Laurenzo's and ENT Consultants' theory of the case.[1] When the jury was unable to reach a verdict, the trial court declared a mistrial.

¶11. Following the mistrial, the trial court set a new trial date, by agreed order, for September 2, 2008. In May 2008, the Burnwatts filed a renewed motion to exclude the testimony of Dr. Mansel. The trial court denied the Burnwatts' motion. Following this decision, the Burnwatts petitioned this Court for interlocutory appeal. This Court accepted the petition, and the Burnwatts appeal the trial court's denial of their motion to exclude the testimony of Dr. Mansel. Finding no error, this Court affirms the Circuit Court of Lafayette County.

## FACTS

¶12. Alex Burnwatt was nine years old in 2001. He had been having a number of infections in his tonsils. His parents brought him to see Dr. Laurenzo in the summer of 2001. After an examination, Dr. Laurenzo recommended that Alex have a tonsillectomy. Alex had the tonsillectomy on July 28, 2001. After the surgery had been completed, Alex's parents, Debra and Charles, visited him in the recovery area. As soon as Alex saw his parents, he

---

[1] This jury instruction was as follows:

> You are instructed that the defendant Dr. John F. Laurenzo, contends that he acted within the standard of care required in his treatment of William Alexander Burnwatt and that the treatment Dr. Lorenzo [sic] rendered in no way contributed to his death. You are instructed that Defendant contends that William Alexander Burnwatt's death occurred during resuscitation attempts. Defendant contends that his treatment of William Alexander Burnwatt in no way breached the standard of care, that Dr. Lorenzo [sic] properly performed the tonsillectomy on Alex Burnwatt on 7/28/2001 and that Alex Burnwatt did not bleed to death.

started to complain to his parents and to hold his throat because it hurt him. Alex spit up prior to his discharge from the facility. However, the medical staff told his parents that Alex was fine.

¶13. When Alex arrived home, he refused anything to eat or drink. Alex stated that he did not feel well and that his throat hurt him. Each time Alex's parents gave him something to eat or drink, Alex would vomit. On most occasions, Alex vomited the food or drink as soon as he ingested it.

¶14. A few days after surgery, Alex's mother, Debra, called Dr. Laurenzo's office and reported Alex's condition. Alex received a prescription for Phenergan to help his vomiting. However, the medication did not help Alex. Two days later, Alex's mother called Dr. Laurenzo's office again. Debra told the staff that Alex continued to throw up and could not keep down any food. Dr. Laurenzo's staff recommended that Debra take Alex to the emergency room.

¶15. Alex was admitted to the emergency room at BMH-NM. Hospital staff brought Alex to a room and checked his vital signs. Alex coughed as he went to a bed, and blood began to pour out of his mouth. He ran to the sink and vomited blood into the sink. Then, he ran from the bathroom and vomited blood into a trash can. Alex fell onto the bed, and a nurse called for a code. Medical staff entered the room and removed Debra to the next room.

¶16. Hospital personnel attempted to resuscitate Alex over a period of time. An attending physician removed a large clot from Alex's throat in an attempt to open his airway. Unfortunately, Alex did not survive. Later, Dr. Bradford Dye informed Debra and Charles that Alex had died.

7

## DISCUSSION

¶17. The standard of review for a trial court's decision either to admit or exclude evidence is abuse of discretion. *Whitten v. Cox*, 799 So. 2d 1, 13 (Miss. 2000); *Robinson Prop. Group, L.P. v. Mitchell*, 7 So. 3d 240, 243 (Miss. 2009); *Beverly Enters., Inc. v. Reed*, 961 So. 2d 40, 44 (Miss. 2007). Unless a substantial right of a party is adversely affected, the appellate courts will not reverse a ruling to admit or exclude evidence. *Whitten*, 799 So. 2d at 13; *Mitchell*, 7 So. 3d at 243.

¶18. The standard of review for the admission or exclusion of expert testimony is the same as for other evidence, an abuse of discretion. *Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara*, 908 So. 2d 716, 721 (Miss. 2005) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003)). *See also Investor Res. Servs., Inc. v. Cato*, 15 So. 3d 412, 416 (Miss. 2009); *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 946 (Miss. 2008). Mississippi Rule of Evidence 702 specifically concerns expert testimony. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702. In *McLemore*, this Court adopted a test stated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and modified in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *McLemore*, 863 So. 2d at 35. Under Rule 702, expert testimony is admissible

8

if it is both relevant and reliable. *Id*. at 38. The trial judge is considered the gatekeeper and determines the value of the expert testimony. *Cato*, 15 So. 3d at 416. As the gatekeeper, the trial court ensures that any expert testimony must be relevant and reliable. *Poole*, 908 So. 2d at 723.

¶19. Mississippi Rules of Evidence 401 and 403 govern what evidence is relevant and when relevant evidence is more probative than prejudicial. Rule 401 states:

> "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶20. Mississippi Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶21. The threshold for admissibility of evidence is not high, and Rule 401 favors the admission of evidence when it has probative value to the case. *Cato*, 15 So. 3d at 417 (citing *McLemore*, 863 So. 2d at 40).

¶22. The parties in this case do not challenge the expert witness's qualifications or expertise to testify as an expert. Instead, the parties challenge whether the trial court should have admitted the testimony of Dr. Mansel concerning his opinion on the cause of Alex's death.

¶23. The Burnwatts' theory of the case was that Alex died as a result of Dr. Laurenzo's negligence in cutting too deeply into the tonsillar bed, resulting in Alex's exsanguination (blood loss) at the hospital. Dr. Laurenzo's and ENT Consultants' theory of the case was that

Alex died as a result of a pneumothorax (air around the lung that causes the lungs to collapse) during resuscitation efforts.

¶24. The Burnwatts argue that Dr. Mansel's testimony is an attempt by Dr. Laurenzo and ENT Consultants to show causation and to place blame on BMH-NM for Alex's death. The Burnwatts further contend that the trial court erroneously admitted this testimony because the order granting summary judgment and dismissing BMH-NM from the suit was premised, in part, on the parties not placing any blame on BMH-NM for Alex's death, which occurred at the hospital. The Burnwatts contend that Dr. Laurenzo and ENT Consultants are estopped from now asserting that the resuscitation efforts of BMH-NM personnel caused Alex's death. Relying on *Medlin v. Hazlehurst Emergency Physicians*, 889 So. 2d 496 (Miss. 2004), the Burnwatts further assert that Dr. Mansel's testimony that Alex's death was a result of resuscitation efforts was irrelevant, confusing, and prejudicial to their case, based on the theory that a tortfeasor is liable for reasonably foreseeable consequences of his or her actions.[2]

¶25. On the other hand, Dr. Laurenzo and ENT Consultants argue that Dr. Mansel's testimony is admissible to show their theory of the case. As previously noted, Dr. Laurenzo's and ENT Consultants' theory of the case was that Alex died as a result of a pneumothorax in the course of resuscitation efforts.

    1.    **Prior trial-court orders**

---

[2] The Burnwatts' reliance on this case is misplaced. *Medlin* concerned whether there was payment and satisfaction of damages. *Medlin*, 889 So. 2d at 499. While the Restatement of Torts Section 457 was mentioned in the opinion, this Court stated that "this Court has never specifically applied the Restatement (Second) of Torts § 457." *Id*. at 500.

10

¶26.    The Burnwatts argue that the designation of Dr. Mansel as an expert witness directly contradicts the June 2005 order granting summary judgment and dismissal of BMH-NM. Indeed, the trial court found no genuine issue of material fact that placed any blame or apportionment of fault on BMH-NM.  In a later order granting partial summary judgment to the Burnwatts on the issue of apportionment of fault to BMH-NM, the trial court found that Dr. Laurenzo and ENT Consultants could not place blame or allocate fault to BMH-NM. The trial court reviewed the testimony of Dr. Laurenzo; Dr. Mansel; Dr. Deborah Burton, the Burnwatts' expert witness; and Dr. Stephen Hayne, the pathologist who conducted the autopsy, in reaching its decision.  The order stated:

> There is no genuine issue of material fact that the dismissed Defendant BMH-NM or its employees were negligent or that their actions proximately caused or contributed to the Plaintiffs' damages and that the Defendants Laurenzo and ENT Consultants should not be permitted to place blame or allocate fault to BMH-NM or its employees.  Consequently, the Plaintiffs are entitled to a Partial Summary Judgment as a matter of law.

However, the trial court also ordered that "this order should not be construed as to prevent the Defendants from presenting their theory of the case."

¶27.    Indeed, in ***Eckman v. Moore***, 876 So. 2d 975 (Miss. 2004), this Court held that a defendant is entitled to jury instructions on his or her theory of the case. ***Eckman***, 876 So. 2d at 979.  In ***Eckman***, the defendant's theory of the case was that the failure of nursing staff to meet the standard of care was a superceding cause of the patient's injuries and death. ***Id***. at 980. The trial court denied Eckman's instruction on this issue notwithstanding evidence presented by both parties of nursing negligence. ***Id***. at 982.  This Court found reversible error and reversed and remanded the case for a new trial. ***Id***. at 989-90.

11

¶28. While the trial court relied on *Eckman* for authority, Mississippi Rule of Evidence 702 generally provides for testimony of an expert. The expert's specialized knowledge is permitted when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Miss. R. Evid. 702. The expert may provide an opinion provided that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Miss. R. Evid. 702. Therefore, Dr. Mansel's testimony, which supports Dr. Laurenzo's theory of the case that Alex died as a result of resuscitation efforts, also may be viewed as simply expert opinion testimony.

**2.    Dr. Mansel's expert opinion and whether it placed blame/fault on BMH-NM**

¶29. Dr. Mansel, a pulmonary and critical-care physician, testified at trial concerning the cause of Alex's death, relying on Alex's medical records. In his testimony Dr. Mansel stated that Alex was dehydrated when he came to the hospital. Alex coughed and dislodged a scab, causing him to bleed. The clot was removed, and the hospital personnel began to give Alex oxygen. Dr. Mansel stated that Alex had a pulse, however, it was lost, and hospital personnel began cardiopulmonary resuscitation (CPR), or chest compressions. An employee attempted to place an intravenous line in Alex's subclavian vein, located under the collar bone. After several attempts, an IV was placed in Alex, however, his neck began to swell. Another IV was placed near his groin. Dr. Mansel opined that the guide wire for the IV, not uncommonly, was not placed in the correct location. Dr. Mansel stated:

> [I]n two to five percent of people you will get what is called a pneumothorax so that you pierce part of the lung and if you do enough of these as I have it's

12

just going to happen. That is despite your best attempt. We just know that it's going to happen because peoples [sic] anatomy are different. But when that happens and that it's like a balloon having a little leak, that air is going to leak out of the lungs.

He stated that both of Alex's lungs collapsed. Dr. Mansel stated that Alex had bilateral pneumothoraces, as evidenced by an x-ray report. He also stated that Alex had experienced a tension pneumothorax on his left side. Ultimately, Dr. Mansel stated that Alex did not die from exsanguination. He stated that "This was a blood clot that got dislodged that got in [Alex's] airway and blood oxygen got low, series of things happened. These lungs collapsed and he died but not from an artery being severed or some below the standard of care or exsanguination."

¶30. In contrast, Dr. Burton, expert witness for the Burnwatts, testified that Dr. Laurenzo had deviated from the standard of care. She stated that, during the tonsillectomy, the surgical plane went too deeply into Alex's muscle in the right tonsil. In Dr. Burton's opinion, this dissection injured deeper blood vessels than normal.

¶31. We find that the trial court did not err by denying the Burnwatts' renewed motion to exclude expert witness testimony from Dr. Mansel. The trial court carefully monitored the proposed and actual testimony and opinions rendered by Dr. Mansel at all stages of the litigation. Dr. Mansel's testimony was within the limitations set by the trial court in its rulings and passed muster pursuant to Rules 401 and 403.

¶32. While the trial court granted summary judgment and dismissal to BMH-NM, it considered that neither party had an expert who would provide testimony critical of the care of BMH-NM or its staff. In addition, the trial court considered Dr. Laurenzo's deposition

13

testimony in which Dr. Laurenzo stated that he had no criticism of the resuscitation efforts by BMH-NM, and that BMH-NM staff had done everything possible to save Alex. The trial court also considered the Burnwatts' acknowledgment that BMH-NM had not committed any negligent act or omission. The order specified that the Burnwatts premised their confession of the motion for summary judgment on Dr. Laurenzo's representation to the court that he would not "point the finger" at BMH-NM.

¶33. However, in the later order granting partial summary judgment to the Burnwatts on the issue of apportionment of fault, the trial court expressly stated that the grant of partial summary judgment should not be interpreted to mean that Dr. Laurenzo and ENT Consultants were prohibited from presenting their theory of the case. Indeed, the trial court reviewed the deposition testimony from all the expert witnesses, including Dr. Mansel. With regard to Dr. Mansel's deposition testimony, the trial court determined that his testimony "opine[d] that William [Alex] Burnwatt in all probability died from a bilateral pneumothorax and an [occluded] airway and not from bleeding." In addition, the trial court determined that "Dr. Mansel had no criticism of any employee of BMH-NM. Dr. Mansel agrees that everything was done correctly by the hospital staff." While the trial court's main focus was the issue of apportionment of fault, the order nevertheless demonstrated that the trial court reviewed Dr. Mansel's testimony, and, that the testimony placed no blame on BMH-NM.

¶34. Similar to the deposition testimony, Dr. Mansel's trial testimony placed no blame on BMH-NM. As previously quoted, Dr. Mansel stated that, due to varying human anatomy in a certain percentage of patients, the placement of the guide wire for the IV may fail in some patients.

14

¶35. In its August 29, 2008, order denying the Burnwatts' renewed motion to exclude the testimony of Dr. Mansel, the trial court reviewed the expert witnesses' testimony provided at trial. Based on that testimony, the trial court determined, pursuant to Mississippi Rules of Evidence 401, that Dr. Mansel's testimony was relevant.[3] The testimony also met the balancing test of Rule 403, which states:

> Although, relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In its analysis, the trial court thoroughly considered the testimony presented at trial and whether it met the balancing test of Rules 401 and 403. The trial court stated:

> Plaintiff's expert, Dr. Deborah Burton, opines that Dr. Laurenzo breached the standard of care when he performed a tonsillectomy on Alex Burnwatt by operating below the normal surgical plane and injuring the deeper blood vessels that are not typically injured during surgery. She further testified that the autopsy report indicates that there was a tear or laceration in the main jugular vein which would normally be encountered during the tonsillectomy. Dr. Burton also indicated that the injury to the jugular vein is an indication that Dr. Laurenzo operated below the normal plane. It is Dr. Burton's opinion that Alex Burnwatt died from a severe loss of blood.

> The autopsy report of Dr. Steven Hayne, an expert Pathologist, indicated that the right jugular vein had a laceration which was caused by the IV guide wire, pressure from IV fluids, or a surgical tool (tonsillectomy). Dr. Hayne's autopsy report states that Alex Burnwatt's organs were pale which indicates a significant loss of blood. According to Dr. Hayne, the loss of blood (exsanguination) was a contributing cause of Alex Burnwatt's death.

> Defendant's expert, Dr. Keith Mansel, was allowed to testify at trial. It was Dr. Mansel's opinion that Alex Burnwatt did not suffer from a severe loss of blood; the IV guide wire inserted during the code caused the tear in the internal jugular vein; and that Alex Burnwatt died not from loss of blood

---

[3] The order does not cite Rule 401 or 403, however, it is evident that the trial court considered those rules.

(exsanguination), but from a blood clot which dislodged and blocked his airway resulting in collapsed lungs.

The loss of blood suffered by Alex Burnwatt is a relevant factor in this matter. A jury could infer that if Alex Burnwatt bled to death, Dr. Laurenzo operated below the plane injuring major blood vessels.

Dr. Mansel's testimony as to the amount of blood lost, the cause of the injury to the jugular vein, and the cause of death of Alex Burnwatt is relevant as to whether or not Dr. Laurenzo operated below the surgical plane.

It is the opinion of the Court that Dr. Mansel's testimony is relevant and reliable and would assist the trier of fact.

The jury was instructed at the June 2007 trial that no actions of omissions or commission by any employee of BMH-NM during or after the code caused or contributed in any way to the death of Alex Burnwatt or the Plaintiffs' damages.

The probative value of Dr. Mansel's testimony substantially outweighs the danger of confusion of the issues or misleading the jury.

The Plaintiffs' renewed motion to exclude the testimony of Dr. Mansel is not well taken and should be denied.

¶36. This Court has held that parties have a right to their theory of the case. *Eckman*, 876 So. 2d at 979.[4] This case concerns whether Dr. Laurenzo's actions or omissions fell below the standard of care. As such, Dr. Laurenzo and ENT Consultants have the right to present their theory of the events that led to Alex's death by way of expert testimony. The trial court monitored Dr. Mansel's expert-witness testimony. *See Cato*, 15 So. 3d at 423 (a trial court may limit expert testimony that is admitted into evidence). Dr. Mansel's testimony did not place blame on BMH-NM, rather it explained that a certain percentage of IV guide wires

---

[4] The Burnwatts' arguments on law of the case, estoppel, and Restatement of Torts Section 457 are inapplicable.

16

may be located improperly. Due to a number of events, it was Dr. Mansel's opinion that Alex died from a pneumothorax and not exsanguination. In addition, the trial court gave limiting instructions on BMH-NM's lack of liability. *See Cato*, 15 So. 3d at 423 (a trial court may limit expert testimony and give limiting jury instructions).

¶37. Further, the trial court properly considered whether Dr. Mansel's testimony met the requirements of Rules 401 and 403. The trial court correctly found that Dr. Mansel's testimony was relevant to the issue of the cause of Alex's death and that it was reliable. In addition, the trial court recognized that the testimony should have been included because its probative value was not substantially outweighed by the danger of confusion of the issues or misleading the jury. To be clear, this opinion should not be construed to make any determination on the weight or credibility of the experts' testimony in this case, for that is an issue that is yet to be determined and is within the province of the jury, not this Court. "Once a witness is qualified as an expert to render expert testimony, then it is within the province of the trier of fact to give weight and credibility to the testimony." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995). We find that the trial court did not err in denying the Burnwatts' renewed motion for exclusion of Dr. Mansel's expert testimony.

## CONCLUSION

¶38. For the above reasons, this Court affirms the decision of the Circuit Court of Lafayette County denying the Burnwatts' renewed motion to exclude Dr. Mansel's expert witness testimony and remands the case for further proceedings in the trial court.

¶39. **AFFIRMED AND REMANDED**.

17

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶40. The doctrine of judicial estoppel "precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." *Dockins v. Allred*, 849 So. 2d 151, 155 (Miss. 2003). The doctrine applies where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kirk v. Pope*, 973 So. 2d 981, 991 (Miss. 2007) (internal cites omitted). "Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation." *Dockins*, 849 So. 2d at 155 (citing *Banes v. Thompson*, 352 So. 2d 812, 812 (Miss. 1977)).

¶41. The trial court's grant of summary judgment in favor of Defendant Baptist Memorial Hospital-North Mississippi was predicated upon the agreement of the plaintiffs and the other codefendants, namely, Ear, Nose & Throat Consultants of North Mississippi, PLLC, and John F. Laurenzo, M.D., that ". . . no expert testimony is anticipated from either of these parties, which testimony is critical of Baptist Memorial Hospital-North Mississippi or of the care rendered by the Hospital's nursing staff or employees." Maj. Op. at ¶ 5.

¶42. After entry of this final judgment in favor of Baptist Memorial Hospital-North Mississippi, from which no appeal was taken by any party, the remaining defendants, Dr. Laurenzo and his practice group, Ear, Nose & Throat Consultants of North Mississippi, PLLC, designated Dr. Keith Mansel as an expert witness. The essence of Dr. Mansel's

expert opinion is that the death of the plaintiffs' child was not the fault of these remaining defendants, but that the child's demise had been caused by the failed resuscitation efforts. Those efforts had been performed entirely by personnel of the dismissed defendant, Baptist Memorial Hospital-North Mississippi. It is abundantly clear that such testimony would be very much at odds with what had amounted to a stipulation between the plaintiffs and the remaining defendants that no testimony would be adduced at trial that cast blame upon the dismissed hospital's employees.

¶43. While it is true, as postulated by the majority, that parties to litigation are entitled to present their theory of the case to the trier of fact, in this instance, the case theory of these remaining defendants was shaped and limited by their agreement – on the basis of which the court made the major decision to dismiss another defendant – that no blame for the child's death would be directed toward the hospital. Yet, in the trial of the case – which ended in mistrial occasioned by a deadlocked jury – the trial court not only allowed Dr. Mansel to opine that the death was caused by untoward circumstances that developed during the unsuccessful attempt by hospital personnel to resuscitate the child, but also told the jury in its instructions: "You are instructed that Defendant contends that William Alexander Burnwatt's death occurred during resuscitation attempts." The proof had shown that the resuscitation efforts were performed entirely by hospital staff members, and not by Dr. Laurenzo or his practice group. The testimony of Dr. Mansel and the emphasis given it in the court's instruction plainly had the effect of laying responsibility for the death of Alex Burnwatt in the lap of the hospital, which Dr. Laurenzo and his group had represented to the court and to the plaintiffs that they would not do.

19

¶44. It would have been a simple matter, and a proper action, for the trial court to have granted the plaintiffs' motion in limine to the extent of precluding the remaining defendants' placing blame, directly or indirectly, on any hospital employee, which would have been entirely consistent with the trial court's correct determination that "Dr. Laurenzo and ENT Consultants should not now be permitted to place blame or apportion fault on a co-defendant which the Court previously adjudicated not to be at fault and accordingly dismissed from prejudice from this law suit." Maj. Op. at ¶ 8.

¶45. When Dr. Laurenzo and his practice group agreed not to place blame for the child's death on the hospital, they limited their theory of the case to their stated position that the treatment they had provided Alex Burnwatt was within the applicable standard of care, and that his loss of blood had not caused his death. Though these defendants may have found it strategically desirable to convey to the jury their expert's opinion of what *did* cause the child's death, they had irrevocably cut themselves off from doing so when they made a representation in a judicial setting, upon which the trial judge and the plaintiffs had relied, and upon which the judge had decisively acted in dismissing the hospital from the litigation.

¶46. Accordingly, I must respectfully disagree with the majority's conclusion that it will be permissible for Dr. Laurenzo and his practice group again to adduce evidence of the hospital's alleged culpability upon a retrial of this case.

**GRAVES, P.J., JOINS THIS OPINION.**